UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

UNITED STATES OF AMERICA          :

    - v. -                                         :          07 Cr. 771 (PAC)

JENNIFER ROWE,                            :

             Defendant.             :

------------------------------------------------x


**DEFENDANT JENNIFER ROWE'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO
SUPPRESS POST-ARREST STATEMENTS**


                                LEONARD F. JOY, ESQ.
                                Federal Defenders of New York
                                Attorney for Defendant
                                **JENNIFER ROWE**
                                52 Duane Street - 10th Floor
                                New York, New York 10007
                                Tel.: (212) 417-8764

                                **FIONA DOHERTY, ESQ.**
                                <u>Of</u> Counsel


TO:    **MICHAEL J. GARCIA, ESQ.**
        United States Attorney
        Southern District of New York
        One. St. Andrew's Plaza
        New York, New York 10007
        Attn: **TODD W. BLANCHE, ESQ.**
            Assistant United States Attorney

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA          :

       - v. -                     :         07 Cr. 771 (PAC)

JENNIFER ROWE,                    :

              Defendant.          :

-----------------------------------------------------x
```

**DEFENDANT JENNIFER ROWE'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO SUPPRESS POST-ARREST STATEMENTS**

The defendant, Jennifer Rowe, hereby moves under Federal Rules of Criminal Procedure 12(b)(3) and 41(h) to suppress post-arrest statements elicited from her in violation of her rights under Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth Amendment to the United States Constitution. In particular, Ms. Rowe moves to suppress two sets of statements that she made on September 20, 2007, following her arrest in this case. Ms. Rowe made the first set of statements before she was advised of her Miranda rights. She made the second set of statements after being informed of her Miranda rights, while she was sick and being treated at the hospital.

**Statement of Facts**

Ms. Rowe is charged in a one-count indictment with participating in a conspiracy to commit visa fraud in violation of 18 U.S.C. §§ 1546 and 371. See Indictment. On September 20, 2007, Ms. Rowe was arrested in connection with this indictment by agents with Immigration and Customs Enforcement ("ICE"). She was arrested at her home in Mount Vernon, New York and subsequently driven by the ICE agents to 26 Federal Plaza in Manhattan. See December 18,

-2-

2007 Affirmation of Jennifer Rowe (the "Rowe Affirmation") ¶¶ 2, 6. Ms. Rowe had never been arrested before. Id.

Ms. Rowe was not feeling well on the day of her arrest. Id. ¶ 3. She had been diagnosed with Type II diabetes in approximately 2001, and she is supposed to take two 500 ml doses of a medicine called Glucophage every day. Id. Ms. Rowe often does not take this medication, as she believes it has serious negative side effects. Id. On the day of her arrest, she had not taken any Glucophage for three days or more. Id. Her eyes were blurry, making it difficult for her to see, and she had palpitations in her heart. Id. She was also suffering from diabetic neuropathy, which causes a painful tingling in her legs, hands, and head. Id. At the time of her arrest, Ms. Rowe informed one of the ICE agents that she was supposed to be taking Glucophage, but that her prescription had run out and she did not have any more of the medication. Id. ¶ 5.

Following her arrest, Ms. Rowe was questioned by the ICE agents, who prepared a report of the statements that Ms. Rowe allegedly made during that interview. See December 19, 2007 Affirmation of Fiona Doherty, Esq. (the "Doherty Affirmation") ¶ 3, Exhibit A. According to the ICE report, Ms. Rowe was questioned by the agents only after she was brought to 26 Federal Plaza in Manhattan for processing. Id. ¶ 4. Once at 26 Federal Plaza, the report indicates that Ms. Rowe was read her Miranda rights and voluntarily agreed to waive those rights. Id. She allegedly "agreed to speak to agents about her recent conversations with SECK[1] and her involvement in the visa fraud scheme." Id. Then, while under questioning at 26 Federal Plaza, she reportedly told the ICE agents about two telephone calls that she had with Mr. Seck, one in 2006 and one in 2007. Id. ¶ 5. She also allegedly said, among other matters, that she had cashed

---

[1] Pape Seck is a co-defendant in Ms. Rowe's case. See Indictment.

at least five money orders related to the case and had given the money to Mr. Seck and an individual named Zongo. Id. She also reportedly told the agents that she had learned of the LULAC program from a woman at a realtor's office. Id.

At that point, according to the ICE report, the questioning stopped and the agents transferred Ms. Rowe to New York Downtown Hospital. Id. ¶ 6. Ms. Rowe was transferred to the hospital to receive treatment for her diabetes. Id. She was subsequently "declared fit for confinement" and was transferred to the United States Courthouse for the Southern District of New York for presentment in magistrate's court. Id.

Ms. Rowe's version of these events differs materially. Although Ms. Rowe acknowledges having made statements to the agents, she maintains that the statements referenced above were not made at 26 Federal Plaza. See Rowe Affirmation ¶¶ 6, 9. Instead, some of the statements were made during the approximately one-hour car-ride from her home in Mount Vernon to 26 Federal Plaza. Id. ¶ 6. The remaining statements were made at the hospital, where she had been transferred for treatment. Id. ¶ 9.

Ms. Rowe recalls that the agents began questioning her in the car on the way to 26 Federal Plaza. Id. ¶ 6. One of the agents asked her when Mr. Seck had contacted her last and what Mr. Seck had said during those calls. Id. He also asked her about a person named Zongo. Id. Ms. Rowe made statements in response to those questions. Id. At the time she made these statements, she had not been informed of her Miranda rights. Id. ¶ 7.

It was only after Ms. Rowe arrived at 26 Federal Plaza that she was informed of her Miranda rights. Id. She signed a form waiving those rights. Id. ¶ 8. The next thing she remembers is that the agents took her to the hospital to receive treatment for her diabetes. Id.

-4-

After she arrived at the hospital at about 9:30 A.M., the nurse tested her blood sugar level and blood pressure level, which were both very high. Id. Her blood sugar level was approximately three times what it should have been. Id. The hospital did not release her until about 2 P.M. or 2:30 P.M., when her blood sugar and blood pressure had returned to acceptable levels. Id.

While Ms. Rowe was at the hospital, the agents continued questioning her. Id. ¶ 9. They questioned her about money orders from applicants and about where she had learned of the LULAC program. Id. As a result, she made additional statements in response to their questions. Id. During this questioning, Ms. Rowe continued to feel unwell. Id. ¶ 10. In addition to the symptoms described above, her body felt clammy and shaky, and she was experiencing painful leg cramps. Id. She had not had anything to eat since 7 or 8 o'clock the previous evening. Id.

**Argument**

**I.    Legal Background**

The Government may use a defendant's statement without transgressing his Fifth Amendment right against self-incrimination only when the decision to confess is the defendant's free choice. See Miranda v. Arizona, 384 U.S. 344, 444 (1966). To protect the Fifth Amendment right against self-incrimination, the Supreme Court in Miranda ruled that police officers may not interrogate a suspect who has been taken into custody without first warning the person of his rights to remain silent and to legal counsel. 384 U.S. at 479. When "a defendant is not advised of his Miranda rights prior to making his custodial statement, an irrebuttable presumption of compulsion arises and the state cannot show that the suspect waived his rights voluntarily." United States v. Gaines, 295 F.3d 293, 298 (2d Cir. 2002) (citing Oregon v. Elstad, 470 U.S. 298, 307 (1985)). In these circumstances, the prosecution is barred from using

statements obtained during the interrogation to establish its case-in-chief. See Michigan v. Harvey, 494 U.S. 344, 350 (1990).

Even if the Miranda warnings are administered, the prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his Miranda rights, and that his statement is truly the product of free choice. See Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). To satisfy this burden, the Government must introduce sufficient evidence to establish that (1) the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (internal quotations and citations omitted).

## II.    The Statements in the Car Should Be Suppressed.

Under the applicable case-law, the first set of statements made by Ms. Rowe on the day of her arrest must be suppressed. After being arrested at her home in Mount Vernon, Ms. Rowe was driven by the ICE agents to 26 Federal Plaza for processing. See Rowe Affirmation ¶ 6. The drive lasted approximately one hour. Id. During the drive, the agents began questioning Ms. Rowe without informing her of her Miranda rights. Id. ¶¶ 6-7. Ms. Rowe made statements in response to their questions, informing the agents about a person named Zongo and providing them with details about two calls that she had received from Mr. Seck. Id. ¶ 6. Because these statements were the product of custodial interrogation but were made without benefit of Miranda

-6-

warnings, an irrebuttable presumption of compulsion arises. The statements are not admissible against her.

### III. The Statements at the Hospital Should Be Suppressed.

The second set of statements, which Ms. Rowe made at the hospital, are also inadmissible. These statements were made in response to continued questioning by the agents. Id. ¶ 9. Specifically, the agents asked Ms. Rowe about money orders from applicants and about where she had learned of the LULAC program. Id. Although Ms. Rowe made statements in response to these questions after being advised of her Miranda rights, she was in no condition to properly waive her rights. Id. ¶¶ 3-4, 8, 10.

Under the applicable case law, only if the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421 (internal citations omitted). In evaluating the totality of the circumstances, a court is to look to the defendant's particular background and experience, the conditions of her interrogation, and the conduct of the law enforcement officers. See United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991).

Here, consideration of the totality of the circumstances indicates that Ms. Rowe did not voluntarily waive her rights. First, Ms. Rowe had never been arrested before and had never before been subject to custodial interrogation. See Rowe Affirmation ¶ 2. Second, she was feeling ill on the day of the arrest and was experiencing a number of debilitating symptoms, including blurred vision, heart palpitations, diabetic neuropathy, shakiness, and painful cramping in her legs. Id. ¶¶ 3-4, 8, 10. Because of her poor health, she was kept at the hospital for several

hours on the day of her arrest. Id. ¶ 8. Indeed, she had to remain at the hospital because her blood sugar and blood pressure were too high to allow her to be released. Id. Nevertheless, despite the fact that the agents knew she had serious health problems and had specifically brought her to the hospital to be treated, they continued to interrogate her while she was waiting at the hospital. Id. ¶ 5, 8. Given this combination of circumstances, the Government cannot meet its burden of showing that the statements were not obtained in violation of the Fifth Amendment. Accordingly, the Fifth Amendment requires that Ms. Rowe's post-Miranda statements be suppressed.

## Conclusion

Ms. Rowe respectfully requests that this Court enter an order suppressing both sets of post-arrest statements, those made pre-Miranda in the car and those made post-Miranda at the hospital, as the statements were obtained in violation of her rights.

Dated:   New York, New York
         December 20, 2007

>                                LEONARD F. JOY, ESQ.
>                                Federal Defenders of New York, Inc.
>                                Attorney for Defendant
>                                **JENNIFER ROWE**
>                                52 Duane Street - 10th Floor
>                                New York, New York 10007
>                                Tel.: (212) 417-8734
>
>                                _/s/ Fiona Doherty_
>                                FIONA DOHERTY, ESQ.
>                                Of Counsel

TO:    **MICHAEL J. GARCIA, ESQ.**
United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
Attn: **TODD W. BLANCHE, ESQ.**
    Assistant United States Attorney